HUNTER v. THE PELHAM MILLS.

1. NONSUIT.—There was some evidence to support the allegations of plaintiff that his damages resulted from the raising of the floodgates by defendant, and nonsuit was properly refused.

2. JURY.—NEGLIGENCE is a mixed question of law and fact, and should be submitted to the jury, under proper instructions from the Court.

3. DAMS—WATERS AND WATER RIGHTS.—The owner of a dam has the right to raise the floodgates therein *only* to protect his own property, when such necessity is caused by a rise in the stream that could not have been anticipated by one of ordinary prudence and foresight.

4. IBID.—IBID.—CHARGE.—Refusal to charge the request that the jury must be satisfied that plaintiff's damage was caused by negligence of defendant in raising his floodgates before they can find for plaintiff, proper under the facts in this case.

5. PLEADINGS.—Complaint alleges, in effect, that defendant acted "wilfully" in raising its floodgates.

6. CHARGE—ACT OF GOD.—Refusal to charge defendant's request as to damages occurring "coincidently" from the act of God and the negligence of defendant, proper in the form in which presented.

7. DAMS—WATER AND WATER RIGHTS.—Dams must be so constructed as to receive, if necessary, the water that would originate from such rains as would be reasonably expected by a man of ordinary prudence and foresight.

Before GARY, J., Greenville, March, 1897.    Affirmed.

Action by J. L. Hunter v. The Pelham Mills on the following complaint:

(1). The defendant above named is a corporation created by and under the laws of this State, and as such may sue and be sued in the courts of this State.    (2). That the defendant owns and operates a large cotton mill, situated in the county and State aforesaid, on Enoree River, and, in order to utilize the waters of the said river in propelling its machinery, the said defendant, many years ago, constructed and built a large rock dam across said river, about thirty feet high and some 300 feet long, thereby damming up the waters of said river and backing its waters about three miles above its dam, thereby constructing and maintaining an immense reservoir, that holds continuously great quantities of water, that is used ordinarily in propelling the machinery of the defendant.    That on the      day of July, 1896, the defendant, through its agents and servants, negligently and carelessly, and without having the proper regard for the rights of this plaintiff, did open its floodgates built and constructed in the aforesaid dam, and kept them open about three days, thereby turning loose great volumes of water and mud in and upon the plaintiff's premises and growing crop, the waters thus turned loose by the defendant causing the said Enoree River to rise to such a height as to sub-

merge and absolutely destroy plaintiff's corn crop then growing adjacent and upon the banks of the said river. (3). That at the time the defendant opened its floodgates, the said Enoree River had in its banks and flowing through its natural channel more than the usual quantity of water flowing in said river on account of recent rains, and the defendant well knew this fact, and, notwithstanding this, the defendant, through its agents and servants, did open its floodgates and turn loose the waters in said reservoir or dam, thereby causing the said waters to overflow the banks of the said river in such a manner as to absolutely destroy plaintiff's growing crop of corn; said waters and mud so carelessly and negligently turned loose, as aforesaid, remained upon the premises and growing crop of the plaintiff for the space of three days, thereby killing said growing crop of corn and otherwise absolutely destroying the same. (4). That on the said      day of July, 1896, the plaintiff was and still is the owner of a certain tract of land, situate, lying, and being on the waters of the aforesaid Enoree River, situate and lying below the property and dam of the defendant, as set forth in paragraphs two and three of this complaint.    That this plaintiff owns valuable bottom land upon and adjacant to said Enoree River, especially adapted to raising corn, and that at the usual time of planting in the spring of this year 1896, the plaintiff planted about twenty acres of said bottom lands in corn, having bestowed great labor in the preparation of the soil, and great labor and expense in the cultivation of the growing crop of corn; and on the said      day of July, 1896, the defendant aforesaid did, without any regard for the rights of the plaintiff or his property, open its floodgates in such a careless and negligent manner as to cause great volumes of water and mud to flow in upon the plaintiff's premises, causing the water to overflow the banks of the said Enoree River and cover the growing crop of corn of this plaintiff with mud and water to a depth of ten feet or more, which said mud and water remained thereon for the space of three days, thereby kill-

ing said crop of corn, and otherwise absolutely destroying the same, to plaintiff's damage $600. Wherefore plaintiff demands judgment against the said defendant for $600 damages, and for the cost of this action.

So much of the charge as is necessary to understand the points raised is as follows: * * * Now, I will define to you what the rights of a party are owning land—land below a dam: the owner of a dam must use reasonable care and skill in so constructing and maintaining it that it will not be the means of injuring another, either above or below, by throwing the water back, or being incapable of resisting it in time of ordinary, usual, and expected freshets. The owner of a dam must use such reasonable care and skill in its construction and maintenance that it will be capable of resisting usual, ordinary, and expected freshets. A dam must be so constructed in the first instance as to be capable of receiving, if necessary, the water that would originate by such pressure, and such rains as would be reasonably expected by a man of ordinary prudence and foresight. That is the test. If you find that the river was full, and the defendant had not constructed his dam so as to resist the ordinary pressure, or that when he opened his floodgates it injured his neighbor below, he would be liable for whatever damages the parties have suffered by reason of the deficiency in the dam, or by reason of those floodgates, if they were raised on account of that deficiency in the construction of the dam. * * * The defendant has the right to open his floodgates and let the water out, if it is necessary to let it out by reason of the fact that a freshet had come upon him, and that it was of such ferocity and fury that it had come upon him unexpectedly—that he had not anticipated it, and that it rendered it necessary to raise the floodgates; and I charge you that the defendant has a perfect right to do it in order to protect himself, and in that case it would be an act of God and not the act of the defendant in raising the floodgates. When he erects a dam across a running stream, he must do

it with such care and make such provisions, that he can control the waters, in order to resist all ordinary freshets, such as may reasonably be anticipated; but if a freshet comes upon him that could not be reasonably anticipated by one possessed of ordinary prudence and foresight, and render it necessary for him to raise the floodgates, the law would allow him to raise the gates under such circumstances. You have heard the facts as to the state of the water at that time. If the occasion was rendered necessary by the flowing of the water in such quantity and so rapidly that it was not anticipated by a man of ordinary prudence and reason and foresight, and he believed it was necessary for him to open those gates to save the dam, he would have the right, under those circumstances, to raise them. But if the dam was not so constructed as to resist ordinary freshets, by a man of ordinary prudence and reason and foresight, so that the dam could not withstand heavy water in time of freshets, and the defendant raised the gates to save the dam, if the dam was not properly constructed, and the damage to the plaintiff was caused by the raising of the floodgates in order to save the dam, if improperly constructed; then, in that case, the plaintiff would have a right to a verdict for damages. Counsel for the defense request me to charge you the following requests:

*First.* "That plaintiff having alleged in his complaint that there was an unusual flow of water in the Enoree River at the time the floodgates were raised, and this fact being admitted in the answer, it becomes a fact in the case that cannot be disputed by either side; such being the fact, I charge you that if it became necessary, for the defendant's protection, to raise the floodgates, they had a legal right to do so." If the necessity to raise such floodgates was caused by such a rise in the river, that one of ordinary prudence and foresight could not have anticipated.

*Second.* "Negligence is the gist of this action. To find for the plaintiff, the jury must be satisfied, from the evidence, that the defendant negligently opened the floodgates of its

dam, and that the raising of said floodgates caused the damage complained of." Refused.

*Third.* "If the jury believe from the evidence that the damage to plaintiff did occur, or would have occurred, notwithstanding the fact that the defendant raised its floodgates, then the verdict must be for the defendant." Charged.

*Fourth.* "If the jury believe from the evidence that the damages complained of occurred from an act of God and from the negligence of the defendant occurring '*coincidently*,' there can be no recovery, unless it be affirmatively proved that if there had been no act of God, the damage would still have occurred." Refused.

Now, take the record and find a verdict. If you find for the plaintiff, say, We find for the plaintiff so much. You will write out your verdict in dollars and cents, not in figures, and sign your name as foreman. If you find that the plaintiff was damaged by reason of the acts of God, he could not recover; but if you find that the dam was not so constructed as to hold the pressure of the water from ordinary freshets that would have been anticipated by a man of ordinary prudence and reason, and the flood was caused by reason of that relief given to the dam on account of its faulty construction, and the plaintiffs were damaged by reason of that fault in the dam, he would be entitled to a verdict.

Verdict for plaintiff for $300. Defendant appeals on following exceptions:

1. Because it is respectfully submitted that his Honor erred in refusing defendant's motion for a nonsuit: a. Because there was no evidence that the damage complained of was caused by the raising of the floodgates. b. Because the cause of the damage complained of was the flood alleged in the complaint to have been an unusual one, and amounted to the *vis major*. c. Because the defendant was engaged in the execution of a lawful right in raising the floodgates, and could be made liable for damage arising therefrom only upon proof of the negligent execution of the right, and there was a total want of such proof.

2. Because his Honor erred in refusing defendant's first request to charge, to wit: "The plaintiff having alleged in his complaint that there was an unusual flow of water in Enoree River at the time the floodgates were raised, and this fact being admitted by the answer, it becomes a fact in the case that cannot be disputed by either side; such being the fact, I charge you that if it became necessary for the defendant's protection to raise the floodgates, they had the legal right to do so;" and in modifying the same by adding: "If the necessity to raise such floodgates was caused by such a rise in the river that one of ordinary prudence and foresight could not have anticipated it."

3. Because his Honor erred in refusing defendant's second request to charge, to wit: "Negligence is the gist of this action.   To find for the plaintiff, the jury must be satisfied from the evidence that the defendant negligently opened the floodgates of its dam, the raising of which floodgates caused the damage complained of.

4. Because the plaintiff, having alleged in the first paragraph of his complaint that the defendant, having erected a very large dam across Enoree River, whereby great quantities of water were confined, "through its agents and servants, negligently and carelessly, and without having a proper regard for the rights of this plaintiff, did open its floodgates constructed in the aforesaid dam, and left them open about three days, thereby turning loose great volumes of water and mud upon plaintiff's premises and growing crop," whereby damage was done; and in the second paragraph, that while Enoree River had in its banks and flowing through its natural channel more than the usual quantity of water by reason of recent rains, the defendant, through its agents and servants, did open the floodgate and turn loose the water in the reservoir or dam, causing the water to overflow the banks of the river and to overflow plaintiff's growing crop of corn, "the water and mud, so carelessly and negligently turned loose as aforesaid," remaining upon the premises and crop of plaintiff for the space of three days, abso-

lutely killing the crop; and in the third paragraph, after alleging the work bestowed on the crop, &c., alleges that the defendant "did, without any regard to the right of this plaintiff or his property, opened its floodgates in such a careless and negligent manner," as to cause great quantities of mud and water to flow on plaintiff's premises and crops and destroy the same, thereby determined the theory of the complaint that the negligent raising of the floodgates, and not a wilful tort, was the wrong complained of; and his Honor erred in refusing to charge as requested, that negligence was the gist of the action.

5. The plaintiff's cause of action, if he has any, can be maintained alone upon the theory of negligence or wilfulness on the part of the defendant. Negligence only, and not wilfulness, is alleged in the complaint, and his Honor erred in taking from the jury the question of negligence, which is the sole issue raised by the pleading. In other words, the opening of the floodgates was done either negligently, wilfully or lawfully, and the verdict for plaintiff is not consistent (1) with the theory of negligence, which was taken from their consideration, (2) or with the theory of wilfulness, which is not alleged or proven, (3) nor with lawfulness, for which the defendant could not be mulcted in damages.

6. Because his Honor erred in refusing defendant's fourth request to charge, to wit: "If the jury believe from the evidence that the damage complained of, occurred from an act of God, and from the negligence of the defendant occurring "coincidently," there can be no recovery unless it be affirmatively proved that if there had been no act of God, the damages would still have occurred."

7. Because his Honor erred in charging the jury as follows: a. "The owner of a dam must use such reasonable care and skill in its construction and maintenance that it will be capable of resisting usual, ordinary, and expected freshets. A dam must be so constructed in the first instance as to be "capable of receiving, if necessary, the water that would originate by such pressure and such rains as would

be reasonably expected by a man of ordinary prudence and foresight. That is the test." And again: b. "If you find that the river was full, and the defendant had not constructed his dam so as to resist the ordinary freshets, or that when he opened his floodgates it injured his neighbors below, he would be liable for whatever damages the parties have suffered by reason of the deficiency in the dam or by reason of those floodgates, if they were raised on account of that deficiency in the construction of the dam." And again: c. "But if the dam was not so constructed as to resist ordinary freshets, by a man of ordinary prudence and reason, so that the dam could not withstand heavy water in time of freshets, and the defendant raised the gates to save the dam, if the dam was not properly constructed, and the damage to the plaintiff was caused by the raising of the floodgates in order to save the dam, if improperly constructed, then, in that case, the plaintiff would have a right to a verdict for damages." And again: d. "But if you find that the dam was not so constructed as to hold the pressure of the water from ordinary freshets that would have been anticipated by a man of ordinary prudence and reason, and the flood was caused by reason of that relief given to the dam on account of its faulty construction, and the plaintiff was damaged by reason of that fault in the dam, he would be entitled to a verdict." There being no allegation in the complaint that the dam was improperly constructed, or that there was any defect whatever in it, but the allegation being that the floodgates were carelessly and negligently raised, and without due regard to the rights of plaintiff and others, and the portion of the charge last excepted to was calculated to confuse the jury and divert their minds from the true issues in the case.

8. Because his Honor erred in refusing to allow the witness, Westervelt, to answer the question, "In liberating that water, what was your sole purpose?"

*Messrs. Cothran, Wells, Ansel & Cothran,* for appellant,

cite: *Complaint must proceed on a definite theory:* 101 Ind., 256; 91 Ind., 96; 3 S. C., 53; 45 S. C., 278; 3 N. E. R., 613; 16 S. C., 579; 47 S. C., 28; 13 S. C., 97. *What is ordinary stage of water:* 12 Minn., 452; 27 Minn., 245; 58 Ia., 97. *Where damages occur from negligence of man and act of God coincidentally, there can be no recovery:* 65 Fed. Rep., 584; 10 Wall., 176; 34 S. C., 66; 47 S. C., 464.

*Messrs. C. J. Hunt* and *C. F. Dill*, contra, cite: *Care in constructing dam:* 30 N. H., 479; 46 N. Y., 511; 129 Mass., 292; 107 Mass., 492. *Duty of owners of dams:* 7 L. R. Exch., 305; 41 L. J. Exch., 193. *Act of God:* 12 Minn., 463; 55 Pa. St., 423; 9 Wait, 119; 30 N. H., 478; 4 McC., 98; 2 Hill, 634; 55 Am. Dec., 680.

*Messrs. Shuman & Dean*, also contra, cite: *Owner of dam must not thereby increase natural flow of water in the stream:* 2 Hill, 634; 26 S. C., 480; 91 Am. Dec., 72; 34 Ib., 310; 46 S. C., 15; 46 N. Y., 511; 107 Mass., 492; 2 N. Y., 163; 45 N. Y., 520; 12 S. E. R., 815. *Plaintiff having alleged negligence, not necessarily confined to that as cause of damage:* 19 S. C., 65; 14 S. C., 6; Code, 190, 191; 3 S. C., 401; 11 S. C., 565; 30 Wis., 365. *Nonsuit improper in case of mere variance in evidence tending to show plaintiff entitled to some relief:* 14 S. C., 6; 8 S. C., 173; 3 S. C., 401. *One collecting water on his land must keep it at his peril:* 4 S. E. R., 902.

April 6, 1898. The opinion of the Court was delivered by

Mr. Justice Pope. This action was commenced in the Court of Common Pleas for Greenville County, in this State, on the 8th day of October, 1896, for damages. It was tried before Judge Ernest Gary and a jury at the March, 1897, term of said Court. The verdict was for the plaintiff in the sum of $300. After entry of judgment on the verdict, the defendant appealed to this Court. The complaint, the charge of the Judge, and the grounds of appeal will be reported. Before passing to the consideration of the questions

raised by appeal, it may not be amiss to state, that by the case for appeal, it is made to appear, that as the cause above stated was one of eleven, by different plaintiffs against the same defendant, and all involving precisely the same issues, the following order was, by consent, passed by the Court: "The State of South Carolina, county of Greenville. In Common Pleas. J. L. Hunter, plaintiff, against The Pelham Mills, defendant. Frank C. Mann against Same. Thomas M. McElreath v. Same. Jane McElreath v. Same. Z. R. Holley v. Same. G. W. Durham v. Same. Boyce Durham v. Same. James Gray v. Same. W. H. Durham v. Same. R. E. Hughes v. Same. E. B. Hughes v. Same. By consent of counsel on both sides of the above stated cases, it is ordered, that all of said causes be tried at the same time, and all questions of law and fact arising and determined shall be conclusive on all parties concerned, except that in the event that the jury determine that the plaintiff, J. L. Hunter, is entitled to damages as claimed, they shall ascertain the amount thereof and so report by their verdict, and that it be referred to the master to ascertain and report the amount of damages to which the other plaintiffs are respectively entitled. In the event that the jury shall find for the defendant, the same verdict shall be entered in each of the other cases. The right of appeal upon any and all questions arising is expressly reserved in behalf of any and all said parties, plaintiffs and defendants. Ernest Gary, presiding Judge. We consent. C. F. Dill, C. J. Hunt, Shuman & Dean, plaintiffs' attorneys. Cothran, Wells, Ansel & Cothran, attorneys for defendant."

Testimony was then offered by the plaintiff tending to prove that he owned a piece of bottom land on the Enoree River, on the Greenville County side; that twenty acres of said bottom land was planted in corn and pumpkins; that said lands were very rich and productive, yielding from fifty to sixty bushels of corn per acre, and that the corn was worth fifty cents per bushel, and that the fodder therefrom was valuable, as well as the pumpkins, in money; that the

corn on said bottom land was six or seven feet high on Friday morning, the 10th of July, 1896, and that the rains which had fallen on Monday, Tuesday, Wednesday, and Friday morning, while they had raised the volume of water flowing in the Enoree River, had not, up to that time (Friday morning), injured the corn and pumpkin crops growing on the plaintiff's bottom land; that about midday there was some rain which fell about the plaintiff's land, but the clouds seemed to lay up the river; that the defendant had the mills known as the Pelham Mill on the banks of the Enoree River, about seven miles higher up the said Reedy River, above the lands of plaintiff; that defendant had a large stone dam across the said river, which backed the water some one and one-half miles, and held a large body of water; that about midday on Friday, the 10th of July, 1896, the defendant, through the means of two floodgates in its stone dam, turned loose large quantities of mud and water from its reservoir in said river, made by the said stone dam, when the water was about fifteen feet in depth, into said already swollen river, which caused the said river to throw over the plaintiff's lands water to the depth of from seven to ten feet, accompanied by large quantities of mud, which remained in said bottom lands from Friday after the 10th of July, 1896, until the Monday then succeeding, by means of which water and mud the crops of the plaintiff on his said bottom lands were completely ruined; that on a previous occasion the plaintiff had remonstrated with the agent of defendant as to the injurious effect of "blowing out" (that is, turning loose the water in its reservoir so as to discharge said water with such force and violence as to rapidly empty the water held by said reservoir, and also carry away with said water the large quantities of mud which had accumulated in said dam).

After the plaintiff had announced that he closed his testimony, the defendant made a motion for a nonsuit upon these grounds: 1. That the cause of damage was the flood alleged by the complaint to have been an unusual one and

amounted to the *vis major*.    2.    That there is no evidence
showing that the damage to the plaintiff was the result of
defendant's negligence.    The Circuit Judge promptly over-
ruled this motion, to which ruling the defendant then ex-
cepted.    This is made an alleged reversible error in the
Circuit Judge by the appeal.

It seems to us that exception 1, as stated in the notice of
motion for a nonsuit, was properly overruled, for there was
some evidence which tended to show that the injury
to plaintiff resulted from the opening of these flood-
gates in defendant's stone dam; an unusual quantity
of water and mud was testified to have been precipitated
upon the bottom lands of plaintiff by this action of the de-
fendant.    It was a question for the jury to determine, and
not the Judge, if there was any testimony supporting plain-
tiff's theory of the cause of his injury; we have repeatedly
held that the Circuit Judge must not grant a nonsuit where
there is any legal or competent testimony supporting plain-
tiff's cause of action.

And then as to the second exception, pertaining to ab-
sence of negligence on the part of defendant, this Court has
repeatedly held that negligence is a mixed question
of law and fact.    Such question must be submitted
to the jury, under instructions of the presiding Judge
showing what constitutes negligence.    The case shows that
there was some evidence submitted tending to show negli-
gence.    This being so, there was no error in the ruling of
the Circuit Judge as to this phase of the motion for nonsuit.

The defendant then offered its testimony, which tended
to show that an unusually heavy rainy season had obtained
in that section where its property was located, but that, in
addition thereto, there fell during the day of Friday an im-
mense quantity of water, which caused the Enoree River to
rise rapidly and to a considerable height in an hour; that
this heavy rainfall caused said Enoree River to rise to a great
height, even after the defendant's agents had opened two of
the floodgates in its stone dam across the river at its mill

seat; that the two floodgates were opened by the defendant's agents to preserve it from an injury through the water before the dam rising to such a height as not only to endanger the abutments of the dam itself, but also to threaten to flood two stories of its mill house, which, if it had happened, would have entailed a loss to defendant of $20,000, in its mill house alone. Defendant's testimony detailed the way in which the dam was constructed, explaining its different parts, showing that it was about 175 yards long, and probably more than twenty feet high. After all the testimony for both sides to the controversy had been concluded, each party made requests to charge. The Circuit Judge charged some of defendant's requests, but refused or modified others. The appeal is intended to question this refusal of the Circuit Judge, as well as to question the propriety in law of some portions of his charge. We will now examine these matters.

We will first direct our attention to the second ground of appeal, relating to the modification made in the first request to charge, as it was preferred by the defendant, by the Circuit Judge, adding thereto these words: "If the necessity to raise such floodgates was caused by such a rise in the river, that one of ordinary prudence and foresight could not have anticipated it." The request to charge was in these words: "The plaintiff having alleged in his complaint that there was an unusual flow of water in Enoree Liver at the time the floodgates were raised, and this fact being admitted in the answer, it becomes a fact in the case that cannot be disputed by either side; and such being the fact, I charge you that if it became necessary for the defendant's protection to raise the floodgates, they had the legal right to do so." In order to pass upon this exception, it is necessary to remember, in the first place, that section 26, of article V., of our present Constitution, imperatively demands that while Circuit Judges shall not charge juries on matters of fact, they shall declare the law. By this constitutional provision, we have previously held, it is not meant

that Circuit Judges shall do more than declare the law applicable to the cause then being tried. So, now, in the second place, let us determine what kind of a cause was then before the Court. As we remarked at the opening of this opinion, this was an action by the plaintiff against the defendant to recover damages, which damages was limited by the complaint to $600, arising from this cause of action; the plaintiff owned a valuable piece of bottom land containing twenty acres, planted in corn and pumpkins, which crops were in fine growing condition until on Friday evening, the 10th of July, 1896, the same were covered to the depth of nine or ten feet, by the water of Enoree River, by water and mud discharged into said stream, which, at that time, had in its banks and flowing through its natural channel more than the usual quantity of water on account of recent rains; and the defendant well knew this fact; by the defendant causing two floodgates in its rock dam, extending across said river, and which rock dam by its height caused an immense volume of water in said river to be dammed up, to be opened, and to remain open from Friday, the 10th day of July, 1896, until the Monday succeeding, whereby the flood of water and mud, precipitated upon and remaining for three days upon plaintiff's said crops, caused their utter destruction, to his damage, $600. To this cause of action, on the part of the plaintiff, the defendant admitted that it operated its mill on the banks of the Enoree River; that it had erected across said river at its mill, the stone dam referred to in the complaint, and alleged that said dam was constructed on the most scientific principles, and of sufficient strength to resist any ordinary or extraordinary pressure of the waters of said river, and also that said dam is capable of containing large quantities of water. The answer further alleges that at the time mentioned in the complaint, the waters of the Enoree River were unusually high, owing to heavy and continuous rains, and were running over said dam with great force, and threatening to overflow the abutment of the dam and flood defendant's mills; that to obviate

this danger, and to confine the flow of the water within narrower limits and moderate its force, the defendant, with great care and caution, raised two of its five floodgates in said dam, and thereby obviated said danger to itself and lessened it to lower proprietors. The defendant further alleges that to have allowed the water to run as it was doing, when its two floodgates were raised, would not only have flooded defendant's mills, but would have caused greater danger to plaintiff's property than could possibly have happened after raising said floodgates. Briefly stated, our views of this charge of the Judge, as modified, is this: while the plaintiff did set up in his complaint, and the defendant did admit in its answer, that on Friday, the 10th July, 1896, Enoree River did have an unusually large volume of water flowing through its natural channel, caused by recent rains, and thereby such fact became an admitted fact, binding both parties to this controversy, yet that the answer of the defendant put in issue its dam as being constructed on the most scientific principles, and of sufficient strength to resist any ordinary or extraordinary pressure of the waters of said river; and further, the defendant offered proof on these matters; and hence, when the Circuit Judge came to charge upon the defendant's request in the matter here under consideration, it was entirely proper for him to pause and consider whether a dam, which was alleged by the party who preferred the request to have been built according to the most scientific principles, and in which floodgates had been constructed by it, did not require him, in declaring the law in relation to lifting those floodgates, to see to it that such floodgates in such dam were not to be lifted in the presence of such a rise in the river as could not have been anticipated by one of ordinary prudence and foresight, excepting *alone* for the protection of the property of the owner thereof from immediate and impending danger. Indeed, we might say that, in our judgment of the law governing such an obstruction in a water course as a dam, the Circuit Judge was almost

too liberal in even charging the request with this modification.

The third exception relates to the refusal of the Circuit Judge to charge defendant's second request: "Neligence is the gist of this action. To find for the plaintiff, the jury must be satisfied, from the evidence, that the defendant negligently opened the floodgates of its dam, and that the raising of said floodgates caused the damage complained of." It is very manifest that the Circuit Judge sought to protect the defendant from any undue action of the jury, for the very next request, which was: "If the jury believe, from the evidence, that the damage to plaintiff did occur, or would have occurred, notwithstanding the fact that the defendant raised its floodgates, then the verdict must be for the defendant," the Circuit Judge charged as the law. It is quite true, that the complaint did allege that the floodgates were "negligently and carelessly, and without proper regard for the rights of this plaintiff," opened by the defendant; yet it must be remembered that there was no testimony offered by plaintiff to disprove, or tending to disprove, that the manner or methods employed by the defendant in the physical fact of defendant lifting its floodgates, was without negligence in the defendant. The fact is, the legal battle was pitched by the defendant, and joined in by the plaintiff, to show that defendant lifted said floodgates to protect its property from the disasters impending over it by reason of the fact that, while the waters of the Enoree River were full, very full, about midday on Friday, the 10th of July, 1896, there was a rain storm in the nature of a "cloud burst" which, added to the full waters of the river, *necessitated* the raising of the floodgates to save defendant's dam and mill. The defendant thereby invoked the law of self-preservation, and hence the Judge, no doubt, felt he had better not put any impediment in the way of a full and fair trial of this issue, by laying stress upon the law of negligence, or seemingly restrict the issues within limits narrower than, in his judgment of the law governing such cases

as the present, they should be restricted.   A "cloud burst"
is the act of God.   If the flood precipitated into the river
by such cloud burst was so overwhelming as to endanger
defendant's dam and mill, although properly located and
constructed, then the Circuit Judge instructed the jury the
plaintiff could not recover.   In his charge the Circuit Judge
dwells with care upon this "cloud burst" or "act of God"
theory of defendant, and, in every instance, declares that if
the flood which filled the river on the 10th of July was of
such a character as to threaten the destruction of defend-
ant's dam or mill, the plaintiff could not recover.   Besides
all these considerations supporting the Judge's refusal to
charge the request, would not the Circuit Judge have, to a
certain extent, been trenching upon the constitutional in-
hibition as to Judges charging upon the facts, if he had said
that the gist of the action was negligence, when negligence
is a mixed question of law and *fact?*   It seems so to us.
The exception must be overruled.

The fourth ground of appeal is disposed of by the mat-
ters embraced in our consideration of the third ground of
appeal, and is, therefore, dismissed.

As to the fifth ground of appeal, it appears to us the plain-
tiff, in his complaint, has effectually put in issue the wilful-
ness of the defendant in opening the two floodgates in
its dam, where he charges "that the defendant * * *
without having the proper regard for the rights of this
plaintiff, did open its floodgates, &c."   It is true, it is not de-
scribed in words as "wilfulness," but it is charged, in effect,
that, governed by his will, without regard to *reason*, the
defendant did open these flood gates.   We think the verdict,
when fairly considered, is responsive to the issues as made
by the complaint and the answer.   We, therefore, overrule
this exception.

As to the sixth ground, which alleges error in the Cir-
cuit Judge for his refusal to charge the fourth request: "If
the jury believe from the evidence that the damages com-
plained of occurred from an act of God and from the negli-

gence of the defendant, occurring 'coincidently,' there can be no recovery, unless it be affirmatively proved that if there had been no act of God, the damage would still have occurred." We think the Circuit Judge properly refused this request to charge, for the reason that it would have required the Judge to say that the act of God, in allowing a "cloud burst," necessarily required such "cloud burst" to have had the force of a "*vis major;*" while, in fact, such "cloud burst" might not have precipitated a fall of rain more than sufficient for an ordinary freshet in the river. Thus, to have justified the defendant's turning loose the accumulated waters from its reservoir when there was no flood from a "cloud burst" with more power in it than belongs to an ordinary freshet in the river, simply because it was "coincident" with the flood from a "cloud burst," would not be justifiable. We notice that the Circuit Judge was very careful, in his charge to the jury, to instruct them that "If you find that the plaintiff was damaged by reason of the act of God, he could not recover." In the form which defendant elected to present the request to charge, there was no error in the Circuit Judge's refusal to so charge the jury.

The seventh ground of appeal ascribes error to the Circuit Judge for charging the jury: (a) "The owner of a dam must use such reasonable care and skill in its construction and maintenance that it will be capable of resisting usual ordinary and expected freshets. A dam must be so constructed, in the first instance, as to be capable of receiving, if necessary, the water that would originate by such pressure and such rains as would be reasonably expected by a man of ordinary prudence and foresight. That is the test." We are utterly unable to perceive any error in this charge; but the appellant suggests that there was no call by the issues in the case for such an expression from the Circuit Judge in his charge to the jury. We cannot see how it could be, then, more than harmless error, even if we adopt the views of appellant. But it occurs to us

that the appellant, in its own answer, raised this question, when it alleged that its dam was built in accordance with "the most scientific principles, and of sufficient strength to resist any ordinary or extraordinary pressure of the water of said river." And, as before remarked, it offered testimony directed to the establishment of these allegations. Then, when the Circnit Judge, in obedience to the constitutional mandate that he must declare the law, called the attention of the jury to the requirements of the law touching the construction of dams across rivers, he but discharged his duty. So, also, the items embraced under subdivisions of this seventh ground of appeal, marked "b," "c," and "d," are dispcsed of by what we have already stated.

The eighth ground of appeal was abandoned at the hearing before us.

It follows, therefore, that the Circuit Judge did not err as complained of.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed, and the cause be remanded to the Circuit Court to enforce the order of Judge Ernest Gary, which was consented to by all the counsel engaged in the eleven causes hereinbefore enumerated.